136 N.J. Super. 449 (1975)
346 A.2d 618
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN A. MARTORELLI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 30, 1975.
Decided October 17, 1975.
*450 Before Judges LYNCH, ACKERMAN and LARNER.
Mr. Don X. Bancroft, attorney for appellant.
*451 Mr. Joseph C. Woodcock, Jr., Bergen County Prosecutor, attorney for the state (Mr. Carl R. Rapoport, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by LARNER, J.A.D.
Defendant was convicted in the Hackensack Municipal Court of operating a motor vehicle while under the influence of intoxicating liquor, in violation of N.J.S.A. 39:4-50(a). This conviction was appealed to the Bergen County Court where defendant was again convicted on a de novo hearing on the record, and sentence was imposed consisting of a $200 fine plus costs and a suspension of his operator's license for two years.
The operative facts upon which the County Court relied in arriving at its conclusion are the following:
On March 25, 1974, at approximately 12:45 A.M., defendant was observed by two police officers operating his vehicle in an extraordinary manner on a sidewalk on a major street in Hackensack for a considerable distance, after which it collided with another vehicle at an intersection and continued for an additional 150 feet before it came to a stop. The police officers then found defendant slumped over the wheel obviously injured and "in a semi-conscious state." While close to him they both noted a distinct odor of alcohol. They concluded from their experience that defendant was under the influence of an alcoholic beverage.
An ambulance removed defendant to the Hackensack Hospital where the police officer observed a physician draw a blood sample from defendant. He then physically transported the sample in three or four vials to the Bergen Pines Hospital for performance of tests to determine alcohol and drug content, and personally turned over the samples to the technician in the laboratory at about 3:10 that same morning. The laboratory reports of these tests were subsequently turned over to the police department and became part of the Hackensack police file. They were produced in court by the police officer.
*452 There were admitted into evidence three toxicology reports from the Bergen Pines laboratory. One blood report and one urine report were negative for various types of drug content. Another blood report revealed a "serum ethanol level of .222%" equivalent to .22% by weight of alcohol in the blood, creating a presumption that defendant was under the influence of intoxicating liquor under N.J.S.A. 39: 4-50.1(3).
The issue raised by defendant centers on the admissibility of the result of the foregoing blood test. The ruling on its admissibility is crucial to the determination of the appeal in view of the fact that the County Court judge relied in part upon this laboratory finding in arriving at his conclusion of guilt.
Defendant's sole contention is that the laboratory report of the Bergen Pines Hospital setting forth the result of the blood test was inadmissible because it does not detail the nature of the test which was utilized nor "the expertise or competency of the person performing the test." In essence, he takes the position that the report was not admissible in the absence of the technician as a witness subject to cross-examination.
This contention requires an examination of the scope of the business entries exception to the hearsay rule. Evid. R. 63(13). This rule reads:
A writing offered as a memorandum or record of acts, conditions or events is admissible to prove the facts stated therein if the writing or the record upon which it was based was made in the regular course of business, at or about the time of the act, condition or event recorded, and if the sources of information from which it was made and the method and circumstances of its preparation were such as to justify its admission.
An examination of the history of the Rule makes it clear that it was originally developed for use in the context of commercial litigation. See Fagan v. Newark, 78 N.J. Super. 294 (App. Div. 1963). However, the rule as interpreted by *453 case law has been held applicable to records of noncommercial organizations. Brown v. Mortimer, 100 N.J. Super. 395 (App. Div. 1968). This broad interpretation is codified in the definition of "business" in Evid. R. 62(5) as "every kind of business, governmental activity, profession, occupation, calling or operation of institutions, whether carried on for profit or not."
A reading of the rule reveals three requirements which must be satisfied before a record is admissible. First, the record must be made in the regular course of business. Second, it must be prepared within a short time of the act, condition or event being described. Third, the source of information and the method of preparation must justify allowing it into evidence. State v. Hudes, 128 N.J. Super. 589, 594 (Cty. Ct. 1974).
It must be emphasized that personal knowledge by the entrant-declarant is not a prerequisite for admissibility under this rule. Moreover, a statement within the record does not independently have to fall within one of the traditional hearsay exceptions if the third prerequisite discussed above is met. See Brown v. Mortimer, supra, 100 N.J. Super. at 403; Mahoney v. Minsky, 39 N.J. 208, 218 (1963).
In the instant matter there is no doubt that Bergen Pines Hospital would fall within the confines of the definition of a business as stated in Evid. R. 62(5). See Webber v. McCormick, 63 N.J. Super. 409 (App. Div. 1960). Moreover, it is beyond dispute that a hospital performs blood tests within the regular course of its business. There is no contention that there was any significant time delay between the taking of the blood test and the recording of the results.
Whether the result of a blood test performed by a hospital is within the ambit of the business records exception is a question which has not been passed upon in New Jersey. It should be noted, however, that the New Jersey Supreme *454 Court Committee on Evidence felt such a test was well within the scope of the business records exception. See Report of Supreme Court Committee on Evidence, Comment on Rule 63(13) at 185 (1963).
Other jurisdictions have admitted such tests under a business records exception. See Thomas v. Hogan, 308 F.2d 355 (4 Cir. 1962); Iovino v. Green Bus Lines, Inc., 277 App. Div. 1002, 100 N.Y.S.2d 148 (App. Div. 1950); Nichols v. McCoy, 38 Cal.2d 447, 240 P.2d 569 (Sup. Ct. 1952). These jurisdictions emphasize the simplicity and reliability of such tests.
It should be noted that not all diagnostic findings are admissible. The degree of complexity of such procedures is the crucial issue. As observed by Professor McCormick, "the admissibility of ordinary diagnostic findings customarily based on objective data and not usually presenting more than average difficulty of interpretation is usually conceded." McCormick, Evidence (2 ed. 1972), § 313 at 732.
The fact that opinion may be present in these reports is not determinative on the issue of admissibility. For example, hospital records which are routinely accepted in evidence as business records often contain opinions relating to diagnostic tests. See Webber v. McCormick, supra; Petrosino v. Public Service Coord. Transport, 1 N.J. Super. 19, 25 (App. Div. 1948); Opdyke v. Halbach, 123 N.J.L. 123 (Sup. Ct. 1939). To require those who perform tests which are relatively simple to appear in court and testify would work a hardship on an already overburdened medical system.
An analogous problem was presented in State v. McGeary, 129 N.J. Super. 219 (App. Div. 1974). In that case a certificate of operability of a breathalyzer instrument was held to be admissible in the face of similar arguments raised by the defense as those advanced by the defendant herein. The court stressed in support of admissibility the simplicity and degree of reliability of the test which resulted in the issuance of a certificate of operability.
*455 The administering of a blood test is also a relatively simple procedure. The amount of alcohol in the brain determines the extent of intoxication. Since brain tissue cannot be taken, blood analysis offers the simplest and most reliable method of ascertaining the level of intoxication. Donigan, Chemical Tests and the Law (Fisher ed. 1966).
Defendant's articulated objection to the effect that the failure to produce the physician or technician who performed the test deprived him of the ability to cross-examine as to his qualifications and as to the nature and reliability of the particular test which he utilized is an assertion which, if recognized, would run counter to the entire rationale underlying the business records exception to the hearsay rule. This rule was designed to eliminate the necessity of producing employees of an organization to establish a fact which experience has demonstrated to be trustworthy. See McCormick, supra, § 306 at 719-720.
It shold be noted, of course, that the evidential controversy herein involves only the admissibility of the test. The weight which is to be accorded to the test is still subject to attack by one who questions either the qualification of or the results reached by the person who performs the same. Such an attack may include the presentation of retained experts or the production by defendant of the very personnel who administered the laboratory test and noted the result in the admitted record. The business records exception permitting the admissibility of the test result merely relieves the offering party from producing the witnesses who participated in the routine activity involved.
In view of the simplicity and generally accepted reliability of a blood test, we hold that the result thereof contained in a report from an institution engaged in performing such a test is admissible as a business entries exception under Evid. R. 63(13). We do not, however, pass upon the admissibility of reports of other more complicated tests which should await determination on a case to case basis. See Report of *456 Supreme Court Committee on Evidence, supra at 186.
Judgment of conviction is affirmed.